NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1634
_____

UNITED STATES OF AMERICA

v.

CORDERRO CODY
a/k/a GATOR
a/k/a FOOTZ
a/k/a DADDY

Corderro Cody,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 5-14-cr-00583-001
District Judge: The Honorable Edward G. Smith

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 8, 2017

Before: SMITH, *Chief Judge,* and HARDIMAN, *Circuit Judge,*
and BRANN, *District Judge*[*]

(Filed: November 17, 2017)

_____

[*] The Honorable Matthew W. Brann, United States District Judge for the Middle District
of Pennsylvania, sitting by designation.

———————————————

OPINION†

———————————————

SMITH, *Chief Judge*.

On October 30, 2014, a six-count indictment was returned by a grand jury sitting in the Eastern District of Pennsylvania. The indictment charged Corderro Cody with one count of conspiring to commit sex trafficking, *see* 18 U.S.C. §§ 2421, 371, and five counts of sex trafficking, *see* 18 U.S.C. §§ 1591(a), 1594. Cody entered a plea of not guilty and Attorneys Maranna J. Meehan and Catherine C. Henry from the Federal Defender's Office (FDO) entered their appearance for Cody. Trial was continued on several occasions at Cody's request. Two superseding indictments followed. These latter indictments added nine more counts of sex trafficking, two of which involved minor victims.

In light of Cody's not guilty plea, defense counsel utilized the services of an FDO investigator in preparation for trial. The investigator acted outside the bounds of her role and passed oral communications and a written communication from Cody to one of his victims. This was in violation of a District Court order that Cody, through counsel, could not contact the victims. After learning of the investigator's conduct, the District Court acted with caution, appointing independent counsel to confer with Cody for the purpose of deciding if he desired new counsel. The Court advised Cody that counsel from the

———————————————

† This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

FDO had not acted improperly and that no matter what counsel he had, the investigator would not be helpful to his case and would not in all likelihood be called to testify at trial. After conferring with the independent counsel, Cody opted to stay with his counsel from the FDO.

Defense counsel, Attorneys Meehan and Henry, continued to prepare for trial, which was scheduled for November 2, 2015. A few weeks before trial, the government offered a Rule 11(c)(1)(C) plea with a sentence of 360 months as opposed to a sentence of life. Cody rejected the offer.

The government turned over Jencks Act material on Tuesday October 27 or Wednesday October 28. The material included twelve grand jury transcripts of the witnesses against Cody. At a subsequent hearing, Attorney Meehan explained that the transcripts were "devastating," prompting the head of the FDO to contact the government to determine if the Rule 11(c) plea offer was still available. The government agreed to extend the offer, but wanted an answer by noon on Thursday October 29 so that prosecutors would know whether to prepare for trial the following Monday.

Attorneys Meehan and Henry traveled to the prison early on Thursday October 29 to meet with Cody. Upon their arrival, counsel immediately began reading Cody the transcripts from the grand jury witnesses. Attorney Meehan testified that they read the transcripts to Cody so he "would have an understanding of how – from our perspective, how devastating the testimony was going to be at trial." A504. She affirmed that she talked about the "fact that the witnesses were corroborating each other in witnessing certain physical beatings, and what 30 years versus the potential for a life sentence would

be for him." A504. Until counsel received the Jencks material, Meehan noted, they did not know the extent to which the victims corroborated each other. A515.

Meehan explained that after counsel finished reading the grand jury transcripts to Cody, Meehan was of the view that Cody "was resigned that the evidence was terrible for him." At that point, Cody accepted the plea offer and defense counsel informed the government.

On Friday October 30, 2015, Cody pleaded guilty pursuant to the written Rule 11(c)(1)(C) plea agreement, which contained an appellate waiver. Though broad, the appellate waiver contained an exception that ensured that Cody had the right to file a § 2255 petition asserting a claim that counsel was ineffective. Notably the appellate waiver contained a clause that waived the right to raise an ineffectiveness claim based on any conflict of interest arising from the defense investigator's improper conduct. A323-24.

The District Judge conducted a very thorough guilty plea colloquy, asking on numerous occasions whether Cody had had sufficient time to confer with counsel and whether Cody understood the nature of the proceeding. Cody replied affirmatively to each inquiry. The District Judge informed Cody that he was engaging in a lengthy inquiry to ensure that Cody was acting knowingly and voluntarily in pleading guilty. The Court carefully reviewed the terms of the appellate waiver, including the conflict of interest created by the defense investigator's conduct and the waiver by Cody of his right to raise that misconduct as a basis for an ineffectiveness claim. The Court spelled out the significance of a Rule 11(c)(1)(C) plea agreement and advised Cody that a "plea of guilt is the strongest form of proof known to the law and that on your plea alone, without the

4

government introducing any evidence, I can find you guilty and all that's left for me to do is sentence you[.]" A371. Cody advised he understood that statement. The Court then instructed Cody that "if you do not believe you are guilty, you should not plead guilty for any reason. And even if you do believe you are guilty, you still have a legal and moral right to plead not guilty and to require the Government to prove its case against you." A371-72. Cody stated he understood. When asked if he was pleading guilty because he truly was guilty, Cody replied: "Yes." A372.

The Government then set forth an extensive factual basis for the plea. A379-392. When the Court asked Cody if he fully admitted that all of those facts were true and correct, Cody replied: "Yes." A392. Cody declined the opportunity to challenge, add to or modify any of the facts. Cody affirmed that he was guilty based on having committed the acts set forth by the prosecutor. After reviewing the elements of the offenses, the maximum sentence and the terms of the appellate waiver, the District Judge asked Cody if he had any questions, but Cody had none. When the Court reiterated the charges and asked Cody how he was pleading, Cody replied "guilty." A395.

The District Court then judiciously made findings on the record that Cody was making the plea knowingly and voluntarily, that the appellate waiver was also made knowingly and voluntarily, and that enforcement of the waiver would not work a miscarriage of justice. It accepted the Rule 11(c)(1)(C) plea.

In January of 2016, Cody moved to withdraw his guilty plea. At a hearing on the motion, Cody was represented by new counsel, Attorney Coley Reynolds. Cody did not deny that he was involved in sex trafficking, but instead asserted he did not engage in

5

force, fraud, or coercion. Reynolds argued that Cody had consistently asserted his innocence, that he had been told he would receive a life sentence if he did not plead guilty, and that he was coerced into pleading guilty because he was not given enough time to think about the plea. A416-18.

Cody and Attorney Meehan testified at the hearing. At the conclusion of the hearing on the motion to withdraw Cody's guilty plea, the District Court recited the procedural history and what transpired at the change of plea proceeding. The District Court concluded that Cody, faced with the Jencks material, "was shocked that [his] victims were willing to testify against him and the extent to which they were willing" to do so. A562. The District Court found that defense counsel had advised Cody of the realities he confronted. It determined that Cody had no credible defense and that he failed to adequately explain why he had taken such a contradictory position when he pleaded guilty. The Court declared "[t]here was no coercion, there was no duress. It was a knowing and voluntary plea made after a lengthy proceeding." A563. The District Court concluded that the effort to withdraw his plea was essentially another attempt to manipulate his victims and that to allow withdrawal would work an "incredible miscarriage of justice." The District Court also stated that "at the time [Cody] entered the guilty plea he believed that [it] was in his best interest. That he had no defense, if he went to trial he's going to get convicted . . . [and] he's likely . . . to get life in prison." *Id.* The Court denied the motion to withdraw. At the sentencing hearing, the District Court

sentenced Cody to 360 months of imprisonment in accordance with the binding Rule 11(c)(1)(C) plea agreement. This timely appeal followed.[1]

We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). Under Federal Rule of Criminal Procedure 11(d)(2), a defendant may withdraw a guilty plea before imposing sentence if the defendants "can show a fair and just reason for requesting the withdrawal." The defendant bears the "burden of demonstrating a 'fair and just' reason" for seeking withdrawal "and that burden is substantial." *Jones*, 336 F.3d at 252. In ruling on a defendant's motion to withdraw his guilty plea, a district court "must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.*

In light of Cody's admissions to the extensive factual basis for the guilty plea to the fifteen counts of conspiring or engaging in sex trafficking, Cody's statement that he was guilty, and mindful of the comprehensive guilty plea colloquy, we conclude that the District Court did not abuse its discretion in denying Cody's motion to withdraw his guilty plea. The Court fully considered the three factors set forth in *Jones*. Accordingly, we conclude that there is no basis on which to disturb the District Court's judgment. We will affirm.

---

[1] The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. Appellate jurisdiction exists under 28 U.S.C. § 1291.